UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROYAL BUSINESS GROUP, LLC,

Plaintiff,

v.

THE ROYAL GROUP D LLC, *et al.*,

Defendants.

24-CV-6372-MAV
DECISION AND ORDER

## INTRODUCTION

On May 23, 2024, Plaintiff Royal Business Group, LLC ("Plaintiff"), commenced this action in New York State Supreme Court, Monroe County, against Defendants The Royal Group D LLC ("Royal Group") and Allen Bloom (collectively, "Defendants"). ECF No. 1-1. On June 14, 2024, Defendants removed the case to federal court on the basis of diversity. ECF No. 1. On September 16, 2024, Plaintiff filed an amended complaint against Defendants, bringing claims for fraudulent inducement, breach of contract, and breach of guaranty. ECF No. 11.

Before the Court is Defendants' motion to dismiss. ECF No. 14. Plaintiff filed a response in opposition to Defendants' motion. ECF No. 18. For the reasons set forth below, Defendants' motion to dismiss is denied.

## BACKGROUND

For the purposes of the deciding the present motion, the Court draws the following facts from the amended complaint, accepts them as true, and draws all reasonable inferences in Plaintiff's favor. *See Trs. of Upstate N.Y. Eng'rs Pension*

*Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

Plaintiff is a New York limited liability company "engaged in the business of revenue-based financing." ECF No. 11 ¶ 11. Defendant Royal Group is a New Jersey limited liability company "engaged in the business of diamond and jewelry sales." *Id.* at ¶ 12. Defendant Bloom is an "individual residing in New Jersey" and serves as the principal of Royal Group. *Id.* at ¶ 13.

## I. Royal Group's First Agreement with Gold Capital Funding

On July 19, 2022, Royal Group and an entity named Gold Capital Funding entered a Revenue Purchase Agreement. *Id.* at ¶ 17. Pursuant to the Revenue Purchase Agreement, Gold Capital Funding paid $60,000 for 15% of Royal Group's total future receipts up to a total of $81,000. *Id.* Royal Group remitted only $66,488 in receipts to Gold Capital Funding under that agreement. *Id.* at ¶ 18.

Plaintiff and Defendants discussed entering into a similar agreement. *Id.* at ¶ 19. Specifically, Bloom informed Plaintiff that Defendants needed funds to purchase inventory for customer orders. *Id.* Bloom indicated that he would use any funds from Plaintiff to purchase inventory to fulfill customer orders. *Id.* at ¶ 20. To establish Royal Group's need for additional funds, Bloom gave Plaintiff recent inventory purchase orders. *Id.* at ¶ 21; ECF No. 11-2.

## II. Royal Group's First Agreement with Plaintiff

On August 18, 2022, Plaintiff and Royal Group entered into a Future Receivables Sale and Purchase Agreement under which Plaintiff paid $110,000 for 18% of Royal Group's future receipts up to $134,200 (the "First Agreement"). ECF No.

11 ¶ 23; ECF No. 11-3. Under the First Agreement, Royal Group would pay Plaintiff a weekly remittance of a good faith estimate of its weekly receipts. ECF No. 11 ¶ 24. The parties agreed that this agreement was not a loan and did not accrue interest. *Id.* at ¶ 25. The agreement included a "mandatory reconciliation provision" which "upon Royal Group['s] . . . written request and its provision of certain necessary information, the total amount collected could be adjusted retroactively to equal the specified percentage of [it]s actual receipts for the applicable period." *Id.* at ¶ 24. Similarly, the agreement included a "mandatory adjustment provision" which allowed Royal Group to provide certain information to adjust the receipts on a "going-forward basis." *Id.* Because these provisions provided for the frequent adjustments of the weekly remittances, the agreement did not require Royal Group to remit its receipts by a specific date. *Id.* at ¶ 25. Nor did it "have a fixed duration or term." *Id.* Based on the "information provided by Royal Group . . . and its representations, warranties, and covenants in the First Agreement," Plaintiff assumed the risk that Royal Group's business would slow or fail for good faith reasons. *Id.* at ¶ 26; ECF No. 11-3 at 6. But the agreement also provided that Royal Group was not excused from performance if its business ceased "due to [Royal Group]'s willful or negligent mishandling of its business." ECF No. 11-3 at 6; ECF No. 11 ¶ 27.

When entering the First Agreement, Defendants made several representations to Plaintiff: (1) they would use the funds "exclusively for the benefit and advancement of . . . business operations and for no other purpose"; (2) Royal Group would deposit all future receipts "into one (and only one) bank account acceptable and preapproved

by Plaintiff"; (3) Royal Group would not "divert receipts from its designated bank account without Plaintiff's written permission"; (4) Plaintiff would have "good, complete, and marketable title" to all future receipts; (5) Royal Group would not "further encumber its future receipts without" Plaintiff's written consent; and (6) Royal Group entered this agreement "solely for business purposes and not for personal purposes." ECF No. 11 ¶ 28. Defendants also agreed to allow Plaintiff to investigate their financial history and promised to provide any financial statements Plaintiff deemed necessary at any point before or after execution of the agreement. *Id.* at ¶ 29. With the First Agreement, Bloom executed a Personal Guaranty of Performance. *Id.* at ¶ 30. Under this Personal Guaranty, Bloom "irrevocably, absolutely, and unconditionally guaranteed" Royal Group's performance under the First Agreement. *Id.*

On August 22, 2018, the same day the parties entered the First Agreement, Plaintiff wired the purchase price minus fees to Royal Group's designated bank account (the "Designated Account"), the same account which Royal Group would deposit its receipts. *Id.* at ¶¶ 31–32. However, "Bloom never deposited any of Royal Group['s] . . . receipts into the Designated Account." *Id.* at ¶ 33. Instead, Defendants deposited the receipts into three other bank accounts. *Id.* Plaintiff believes that one account is a business account associated with Defendants (the "Alleged Business Account"), and the other two were Bloom's personal bank accounts. *Id.* Defendants also never transferred the First Agreement's purchase price funds from the Designated Account to the Alleged Business Account. *Id.* at ¶ 34. Under the First

Agreement, Royal Group paid remittances totaling $71,250. *Id.* at ¶ 35. An outstanding balance of $62,950 remains under the First Agreement. *Id.*

## III. Royal Group's Second and Third Agreements with Plaintiff

In September 2022, Plaintiff and Royal Group entered into two additional Future Receivables Sale and Purchase Agreements. *Id.* at ¶¶ 39, 47. On September 8, 2022, Plaintiff agreed to pay $200,000 for 18% of Royal Group's future receipts up to $272,000 (the "Second Agreement"). *Id.* at ¶ 39; ECF No. 11-7. On September 21, 2022, Plaintiff agreed to pay $110,000 for 18% of Royal Group's future receipts up to $149,600 (the "Third Agreement"). ECF No. 11 ¶ 47; ECF No. 11-10. All other terms of these agreements are the same as those in the First Agreement. ECF No. 11 ¶¶ 39,47. With each of these agreements, Bloom executed a Personal Guaranty of Performance assuring Royal Group's performance under the Second and Third Agreements. *Id.* at ¶¶ 40, 48.

Plaintiff performed under each agreement, making payments to the Designated Account on the day each agreement was executed. *Id.* at ¶¶ 41, 49. Bloom, however, never transferred those funds to the Alleged Business Account. *Id.* at ¶¶ 42, 50. Royal Group only made partial remittances under these agreements: $89,600 under the Second Agreement and $46,950 under the Third Agreement. *Id.* at ¶¶ 43, 51. As a result, an outstanding balance of $182,400 remains under the Second Agreement and a balance of $102,650 remains under the Third Agreement. *Id.*

## IV. Royal Group's Second Agreement with Gold Capital Funding

On October 3, 2022, Royal Group and Gold Capital Funding entered another

Revenue Purchase Agreement under which Gold Capital Funding paid $80,000 for 22% of Royal Group's future receipts up to $119,200. *Id.* at ¶ 55; ECF No. 11-13. Royal Group remitted $88,525 to Gold Capital Funding under that agreement. ECF No. 11 ¶ 56.

## V. Royal Group's Fourth and Fifth Agreements with Plaintiff

On October 20, 2022, Plaintiff and Royal Group entered into another Future Receivables Sale and Purchase Agreement (the "Fourth Agreement"). *Id.* at ¶ 57; ECF No. 11-14. Under the Fourth Agreement, Plaintiff agreed to pay $110,000 for 18% of Royal Group's future receipts up to $149,600. ECF No. 11 ¶ 57. On October 28, 2022, Plaintiff and Royal Group entered into another agreement (the "Fifth Agreement") under which Plaintiff agreed to pay $100,000 for 18% of Royal Group's future receipts up to $139,000. *Id.* at ¶ 65; ECF No. 11-17. The other terms of these agreements were the same as the prior Future Receivables Sale and Purchase Agreements. ECF No. 11 ¶¶ 57, 65. Along with each agreement, Bloom executed a Personal Guaranty of Performance assuring Royal Group's performance under the Fourth and Fifth Agreements. *Id.* at ¶¶ 58, 66.

Plaintiff performed under each agreement on the day they were executed. *Id.* at ¶¶ 59, 67. Once again, Bloom never transferred the funds from the Fourth and Fifth Agreements to the Alleged Business Account. *Id.* at ¶¶ 60, 68. Royal Group only made partial remittances under these agreements: $13,400 under the Fourth Agreement and $16,646 under the Fifth Agreement. *Id.* at ¶¶ 61, 69. As a result, an outstanding balance of $136,200 remains under the Fourth Agreement and $122,354

remains under the Fifth Agreement. *Id.*

On the day the parties executed the Fifth Agreement, Bloom made additional representations to Plaintiff regarding Royal Group's finances and its ability to remit payment. *Id.* at ¶ 73. More specifically, Bloom indicated that Royal Group expected more than $1,000,000 to "start to flow in" soon. *Id.* at ¶ 74.

## VI. Royal Group's Remaining Agreements with Plaintiff

In November 2022, Plaintiff and Royal Group entered into two more Future Receivables Sale and Purchase Agreements. *Id.* at ¶¶ 76, 84. On November 8, 2022, Plaintiff agreed to pay $55,000 for 17% of Royal Group's future receipts up to $76,450 (the "Sixth Agreement"). *Id.* at ¶ 76; ECF No. 11-20. On November 29, 2022, Plaintiff agreed to pay $33,000 for 17% of Royal Group's future receipts up to $46,200 (the "Seventh Agreement"). ECF No. 11 ¶ 84; ECF No. 11-23. All other terms of these agreements were the same as the prior agreements. *Id.* at ¶¶ 39, 47. Bloom executed personal guarantees for both the Sixth and Seventh Agreements. *Id.* at ¶¶ 77, 85.

Plaintiff performed under the Sixth Agreement on the day it was executed. *Id.* at ¶ 78. On December 2, 2022, Plaintiff partially performed under the Seventh Agreement, providing $17,500 to Royal Group. *Id.* at ¶ 86. Bloom never transferred those funds from the Designated Account to the Alleged Business Account. *Id.* at ¶¶ 79, 87. Royal Group made only partial remittances under the Sixth Agreement, totaling $13,800. *Id.* at ¶ 80. Royal Group made no remittances under the Seventh Agreement. *Id.* at ¶ 88. As a result, an outstanding balance of $62,650 remains under the Sixth Agreement and $24,650 remains under the Seventh Agreement. *Id.* at ¶¶

80, 88.

Between the seven agreements, Plaintiff provided $665,500 in funds and Royal Group remitted only $251,646. *Id.* at ¶ 93.

## VII. Royal Group's Closure

On February 7, 2023, Royal Group and an entity named RDM Capital Funding, LLC DBA FinTap ("FinTap") entered a Master Receivables Purchase Agreement under which Fintap agreed to pay $110,000 for 6% of Royal Group's future receipts up to $145,200. *Id.* at ¶ 95; ECF No. 11-26. Royal Group remitted $36,098 under this agreement. ECF No. 11 ¶ 96.

On March 29, 2023, Defendants' attorney emailed Plaintiff to inform them that "Royal Group Jewelry [was] closing its business due to insufficient receipts to maintain its operations," and that "Mr. Bloom w[ould] be filing for personal bankruptcy." *Id.* at ¶ 97. The following day, Plaintiff's counsel requested Defendants provide several relevant financial documents related to their business closing: (1) the last six months of deposit account statements for all accounts Royal Group deposited receivables; (2) a "current AR aging"; (3) "a current inventory list"; and (4) Royal Group's "YE financial statements" for 2022. *Id.* at ¶ 98.

On April 10, 2023, Defendants provided Plaintiff with bank statements from September 2022 to March 2023 from the Alleged Business Account. *Id.* at ¶ 100. These bank statements indicate that Royal Group never transferred funds from the Designated Account to the Alleged Business Account, which Defendants had represented was Royal Group's only bank account. *Id.* at ¶ 101(a). Instead, the bank

statements show "hundreds of thousands of dollars transferred to and from [bank] accounts ending in 9118 and 0162"— which Plaintiff believes are Bloom's personal accounts *Id.* at ¶ 101(b). Specifically, in February and March 2023, around Royal Group's closing, Defendants transferred $513,170 from the Alleged Business Account to other accounts, with "the vast majority of these funds being transferred to the accounts ending in 9118 and 0162." *Id.* at ¶ 101(c). The statements also show that Royal Group usually accrued monthly business expenses of about $10,000, which was significantly less than the amount it represented to Plaintiff that it needed. *Id.* at ¶ 101(d). Finally, the bank statements reveal the use of Royal Group's funds for personal expenses such as "Macys, J. Crew, Chicos off the Rack, Tommy Bahama, Oreo.com, LL Bean, Thrive Cosmetics, Benefit Cosmetics, Wegmans, and other retailers with no conceivable connection to Royal Group D's business." *Id.* at ¶ 101(e).

Royal Group did not provide Plaintiff's counsel with the bank statements for the "accounts ending in 9118 and 0162" despite their request for bank statements from all accounts which Royal Group had deposited money into. *Id.* at ¶¶ 98, 102. Defendants also failed to provide a "current AR Aging Report, a current inventory list, or a 2022 financial statement." *Id.* at ¶ 103.

On April 20, 2023, Plaintiff's counsel contacted Defendants' counsel and requested an inventory list for the three months before Royal Group's closure. *Id.* at ¶ 104. Defendants' counsel provided Royal Group's inventory report from March 31, 2023. *Id.* at ¶ 105; ECF No. 11-30. That inventory report indicated that on that date Royal Group owned nine pieces of jewelry worth $13,725 total. ECF No. 11 ¶ 106.

Plaintiff alleges that the significant financial disparity between the inventory report and the funds it provided to Royal Group indicate that Royal Group either: (1) "sold the bulk" of its inventory, "kept the receipts from those sales[,] and diverted them from the Alleged Business Account"; (2) "is concealing tens or hundreds of thousands of dollars" of inventory; or (3) "never purchased any inventory with the funds Plaintiff advanced and simply kept that money." *Id.* at ¶ 107. In addition, Plaintiff alleges that Bloom continues to operate Royal Group's "business under another name or in his individual capacity" and closed Royal Group to avoid remitting payment to Plaintiff. *Id.* at ¶ 108. Finally, Plaintiff alleges that Bloom "never filed for personal bankruptcy." *Id.* at ¶ 109.

Plaintiff brought this action against Defendants alleging seven causes of action for fraudulent inducement in relation to each of the seven agreements; seven breach of contract causes of action for each of the seven agreements; and seven breach of guaranty causes of action as to each of Bloom's personal guarantees. *Id.* at 20–44.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

It is well-settled that a court reviewing the sufficiency of a claim to survive a motion to dismiss under Rule 12(b)(6) may consider documents that are incorporated by reference into the complaint, as well as documents that—even if not incorporated by reference—are "integral" to the complaint. *Chambers v. Time Warner*, 282 F.3d 147, 152–54 (2d Cir. 2002). Indeed, where documents are incorporated by reference into a complaint, "the underlying documents rather than the [p]laintiff's description of them govern on a motion to dismiss under Rule 12(b)(6)." *Rimu Cap. Ltd. v. Ader*, No. 23-CV-05065 (LJL), 2025 WL 1268342, at *15 (S.D.N.Y. May 1, 2025) (internal quotation marks and citation omitted).

Claims alleging fraud must meet the heightened pleading standard of Rule 9(b). Fed. R. Civ P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* To comply with this heightened pleading requirement, the pleading must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, NA.*, 459 F.3d 273, 290 (2d Cir. 2006) (quotation omitted). "[A] plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). But "allegations may be based on

information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

## DISCUSSION

Defendants move to dismiss this action on several grounds. Specifically, they argue that (1) the fraud claims are barred by the economic loss doctrine and New York common law; (2) Plaintiff failed to meet the heightened pleading requirements for fraud claims; and (3) Plaintiff failed to state a claim for breach of contract. ECF No. 14 at 6–8.

### I. Fraudulent Inducement

Defendants argue that the fraudulent inducement claims are barred by the economic loss doctrine and New York common law,[1] and that the amended complaint does not meet the pleading requirements for fraud. ECF No. 14 at 15–19.

#### A. Economic Loss Doctrine

The economic loss doctrine is the "'conflat[ion]' of two distinct but related principles: (1) the economic loss rule, and (2) the prohibition against duplicative contract and tort claims." *Asinga v. Gatorade Co.*, 182 F.4th 222, 227 (2d Cir. 2026) (quoting *IKB Intl., S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 290 (2023)). Defendants argue that Plaintiff's fraudulent inducement claims should be dismissed under both principles.

---

[1] There does not appear to be any dispute between the parties that New York law governs their agreements. *See, e.g.,* ECF No. 11-23 ¶ 43 ("This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law.").

*i. Economic Loss*

Defendants first argue that the fraud claims must be dismissed because they are barred by the economic loss rule. ECF No. 14 at 15–16. The Court disagrees.

Under the economic loss rule, a plaintiff "is limited to contract remedies and may not seek damages in tort for economic loss." *Asinga*, 182 F.4th at 227 (quoting *IKB Intl., S.A.*, 40 N.Y.3d at 290). But, as Plaintiff argues, "New York courts have long 'routinely permitted' fraud claims for pure economic loss to proceed." *In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 432 (S.D.N.Y. 2017) (collecting New York State cases that declined to extend economic loss rule to fraud); *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 397 n. 12 (E.D.N.Y. 2021) ("Most district courts applying New York law 'have declined to apply the economic loss rule to intentional torts' such as fraud.") (quoting *In re GM LLC*, 257 F. Supp. 3d at 432). As such, Plaintiff's fraudulent inducement claims cannot be dismissed under the economic loss rule.

*ii. Duplicative Contract and Tort Claims*

Defendants state that under New York common law, fraud claims must be dismissed where "the fraud alleged relates to a breach of contract." ECF No. 14 at 16 (quoting *Computech Int'l, Inc. v. Compaq Comput. Corp.*, No. 02-Civ-2628 (RWS), 2004 WL 1126320, at *11 (S.D.N.Y. May 21, 2004)). They argue that Plaintiff's "fraud claims . . . are identical to its contract claims" and are based on the "failure to comply with . . . contractual requirements." *Id.* at 17. Therefore, Defendants say that the fraudulent inducement claims operate only as a "recharacterize[ation]" of the breach

of contract claims. *Id.* The Court again disagrees.

It is true that generally under New York law, "breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012). In other words, a plaintiff cannot bring a fraud claim where it merely restates their breach of contract claim. *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). However, "New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007). And because a contractual "warranty is not a promise of performance, but a statement of fact," a plaintiff "may elect to sue in fraud on the basis of misrepresentations that breach express warranties." *Id.* at 184. As such, "a claim based on fraudulent inducement of a contract is separate and distinct from a breach of contract claim under New York law." *Id.*; *Stewart v. Jackson & Nash*, 976 F.2d 86, 88–89 (2d Cir. 1992).

Plaintiff argues that the misrepresentations that create its fraudulent inducement claims are separate from those of its breach of contract claims because the fraudulent misrepresentations were misstatements of present facts and contractual warranties at the time the agreements were executed. ECF No. 18 at 21. Specifically, Plaintiff says the "inducing misrepresentations" included that: (1) Royal Group needed advances "solely to purchase inventory to fill purchase orders for its

customers"; (2) Royal Group "had good, complete, and marketable title to all of its future receipts"; and (3) Royal Group "had $1,000,000 'flow[ing] in' soon." *Id.* at 22; ECF No. 11 ¶¶ 111, 133, 155, 177, 199, 221, 243. As Plaintiff explains, "[t]hese are all statements of present fact," and that is not altered by the fact that some are also contractual warranties. ECF No. 18 at 22–23; *see also* ECF No. 11-3 at 7–8

Defendants' argument focuses largely on courts disfavoring fraud claims based on a future intent not to perform. ECF No. 18 at 23. However, Plaintiff's claims for fraud do not allege a future intent not to perform. Instead, Plaintiff alleges that Royal Group failed to disclose material information and made certain misrepresentations about their business that were meant to induce Plaintiff's entry into the agreements. *See* ECF No. 11 ¶¶ 111–12. In other words, Plaintiff's fraud claims are based on statements of present fact related to the state of the business, bank accounts, finances, and present marketable title, while the breach of contract claims are based on Defendants' alleged wrongdoings after the agreements were executed.

As such, the Court finds that Plaintiff's fraudulent inducement claims and breach of contract claims are not identical, and therefore not barred by New York common law's prohibition on duplicative breach of contract and tort claims.

### B. Fraud Pleading Requirements

To state a claim for fraudulent inducement under New York law, a plaintiff must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such

reliance." *Capax Discovery, Inc. v. AEP RSD Inv'rs*, 285 F. Supp. 3d 579, 586 (W.D.N.Y. 2018) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)). As discussed above, claims involving fraud must be plead with particularity. *See* Fed. R. Civ P. 9(b). But a plaintiff is not required to specifically plead facts that are "peculiarly" within the possession of the defendant. *Wexner*, 902 F.2d at 172.

In seeking dismissal of the fraudulent inducement claims, Defendants argue that Plaintiff alleges only that "the loans were funded and were not paid back in full prior[,] . . . that less than $2000 was presumably used for non-business purposes," and that Plaintiff failed to "provide any evidentiary support of misrepresentations of any facts that would entice Plaintiff to make any of the loans." ECF No. 14 at 18.

As an initial matter, while Plaintiff must state its claims with specificity, it is not required to provide evidence at the pleading stage. *Liberty Ridge LLC v. Realtech Sys. Corp.*, 173 F. Supp. 2d 129, 137 (S.D.N.Y. 2001) ("courts should not demand a level of specificity in fraud pleadings that can only be achieved through discovery.") And so the lack of "evidentiary support of misrepresentation[]" is inapposite. Nonetheless, Plaintiff does provide documents with its amended complaint that support its allegations. For example, Plaintiff provides financial documents that indicate Royal Group may have had other bank accounts despite representing to Plaintiff that the Alleged Business Account was its only bank account. *See* ECF No. 11-28 (showing significant monetary transfers from the Alleged Business Account to other bank accounts). Whether these bank accounts are actually evidence of fraud in

this case is an issue for a later stage. But these documents certainly suggest the plausibility of Plaintiff's claim that Defendants made misrepresentations about their finances before executing the agreements.

Plaintiff alleges that before entering the agreements, Defendants made material misrepresentations that Royal Group needed advances "solely to purchase inventory to fill purchase orders for its customers" and entered the Agreements "solely for purposes related to [its] business." ECF No. 11 ¶¶ 111, 133, 155, 177, 199, 221, 243. Plaintiff also alleges that Defendants failed to disclose the existence of Royal Group's other bank accounts, and stated that the Alleged Bank Account was Royal Group's only account. ECF No. 11 ¶¶ 101(a). Before entering each agreement, Royal Group also misrepresented that it had "had good, complete, and marketable title to all of its future receipts." *Id.* at ¶¶ 28, 111, 133, 155, 177, 199, 221, 243. But Plaintiff alleges that Royal Group entered into a Revenue Purchase Agreement with Gold Capital Funding in July 2022—one month before entering into the First Agreement with Plaintiff—and had not remitted full payment under that agreement. *Id.* at ¶ 17. Royal Group also assured Plaintiff before entering the Sixth Agreement, that it "had $1,000,000 'flow[ing] in' soon" which Plaintiff alleges was untrue. *Id.* at ¶ 74. Finally, Plaintiff alleges that Defendant significantly misrepresented its monthly business and operational expenses in order to secure more funds. *Id.* at ¶ 101(d).

Plaintiff says that its entry into the Future Receivables Sale and Purchase Agreements was based on these representations about Royal Group's business needs and finances. *Id.* at ¶¶ 116, 138, 160, 182, 204, 226, 248. And Plaintiff certainly

alleges resulting damages—that is, the unremitted funds it has yet to recover. *Id.* at ¶¶ 94, 117, 139, 161, 183, 205, 227, 249. Therefore, Plaintiff has plead the elements of fraudulent inducement with sufficient specificity.

Moreover, Plaintiff argues that the Court need not "require unflagging adherence to Rule 9(b)[']s particularity commitment" because some facts are "peculiarly within Defendants' possession." ECF No. 18 at 25. Plaintiff says that there is additional necessary information in Defendants' financial documents, which is "concealed from Plaintiff" despite Defendants' "contractual duty to provide them." *Id.* at 26. And Plaintiff believes that Defendants have since diverted funds to non-disclosed bank accounts and now claims business failure while still retaining the funds elsewhere. *Id.* at 15–16. And so, to the extent Defendants argue that Plaintiff has not plead specifics about Royal Group's misrepresentations concerning its finances, that information is not necessary at this stage. *See id.* at 25–26 ("additional facts to support Plaintiff's fraudulent inducement claims are peculiarly within Defendants' possession, specifically in the financial documents that Defendants concealed from Plaintiff (despite having a contractual duty to provide them)").

Plaintiff's allegations meet the Rule 9(b) pleading requirements by identifying the speakers, fraudulent statements, and circumstances that indicate the statements were fraudulent. The amended complaint provides Defendants "with fair notice of . . . [P]laitiff's claim, to safeguard . . . [D]efendant[s'] reputation from improvident charges of wrongdoing, and to protect . . . [D]efendant[s] against the institution of a strike suit." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016)

(quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

In sum, the Court finds that the allegations contained in the amended complaint are sufficiently particular to meet the pleading requirements for a fraudulent inducement claim. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's fraudulent inducement claims.

## II. Breach of Contract

"Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

The parties do not dispute that Plaintiff alleges the existence of an agreement—namely, the seven Future Receivables Sale and Purchase Agreements. *See* ECF No. 11 at 4–14. It is also clear that Plaintiff alleges that it performed under the agreements. *Id.* at 4–14.

Defendants argue that Plaintiff's breach of contract claims must be dismissed because Plaintiff "alleges no facts supporting the alleged breaches which cause any harm, other than the nonpayment"; "offers no facts that contradict what is stated as the reason for closing the business"; and "fail[s] to allege any damages caused by anything other than the cessation of the business." ECF No. 14 at 20–21. Defendants add that the claims must be dismissed because Plaintiff assumed the risk of Royal Group's business closure. *Id.* at 20.

Plaintiff concedes that it did assume the risk of Royal Group's business failure, but counters that it "did not assume the risk that Royal Group['s] . . . business would slow down or fail because of Royal Group['s] . . . willful or negligent mishandling of its business, or . . . failure to comply with its obligations" and "did not assume the risk that Royal Group['s] . . . business would close due to Mr. Bloom's failing to use Plaintiff's advance for business purposes." ECF No. 18 at 9, 28. In fact, the agreements expressly state just that. ECF No. 11-3 at 6 (Plaintiff acknowledges it assumes the risk of Royal Group's business closure "but not due to [Royal Group]'s willful or negligent mishandling of its business or due to [Royal Group]'s failure to comply with its obligations under this Agreement").

Plaintiff's amended complaint alleges more than breach of contract premised simply on Royal Group's business failure. Plaintiff alleges that Defendants breached the contracts through willful wrongdoing in several ways. Specifically, Plaintiff alleges that (1) Defendant concealed relevant financial documents even after Plaintiff's requests for such documents under the terms of the agreements; (2) Defendant used the funds for non-business purposes; (3) Defendants diverted receipts from the agreed upon Designated Account to other accounts without disclosing such information to Plaintiff; and (4) Royal Group further encumbered its future receipts when it entered into the October 3, 2022, Revenue Purchase Agreement with Gold Capital Funding, and the February 7, 2023 Master Receivables Purchase Agreement with FinTap. ECF No. 18 at 17; ECF No. 11 ¶¶ 123, 145, 167, 189, 211, 233, 255. Altogether, Plaintiff alleges that Royal Group intentionally diverted funds or

concealed inventory, giving the appearance of business closure to avoid remitting further payment under the agreements, ECF No. 11 ¶ 107—this is much more than simply non-performance after business failure.

Defendants argue that these allegations do not overcome Plaintiff's assumption of the risk that Royal Group's business would fail. ECF No. 14 at 20. But contrary to Defendants' characterization of the amended complaint, Plaintiff offers more than "mere[] speculat[ion] that because the loans have not been paid back, Defendants must have wrongfully taken or used the money." *See id.* In fact, Plaintiff does allege "facts which established that the business closure was due to . . . improprieties by the Defendants." *See id.* at 21. Plaintiff did not allege that Royal Group's business simply failed, it alleges that Defendants engaged in a series of willful wrongdoings in breach of the terms of the seven agreements to avoid remitting payment. *Id.* Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has stated a claim for breach of contract.

## III. Breach of Guaranty

Without providing substantial argument on the point, Defendants seem to suggest that Plaintiff's breach of guaranty claim must be dismissed because Plaintiff failed to state a claim for breach of contract.[2] ECF No. 14 at 19.

To be sure, under New York law, a cause of action for breach of guaranty "is

---

[2] Defendants also include a footnote stating that "[t]here is another reason for dismissing the breach of [g]uaranty claims that cannot be raised at this stage of the proceedings, that being that since Royal D has no income from which to pay Plaintiff, the guarantor was not obligated to do anything." ECF No. 14 at 8 n.6. The Court declines comment on the merits of this particular argument at this time.

dependent on the success of the breach of contract cause of action." *Tapp Partners, LLC v. Wall Sections Inc.*, 244 A.D.3d 1727, 1729 (N.Y. App. Div. 2025). Yet though related, the elements of breach of contract and breach of guaranty are not the same. To state a claim for breach of guaranty, "a plaintiff must plausibly plead '(1) that it is owed a debt from a third party; (2) that the defendant made a guarantee of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant.'" *Greenlight Reinsurance, Ltd. V. Appalachian Underwriters, Inc.*, 958 F. Supp. 2d. 507, 521 (S.D.N.Y. 2013) (quoting *Chemical Bank v. Haseotes,* 13 F.3d 569, 573 (2d Cir. 1994)); *see also Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 84 (N.Y. 2015) (reciting the elements as "the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty").

As discussed above, the Court finds that Plaintiff has sufficiently stated a claim for breach of contract under the agreements. In other words, Plaintiff has alleged that it is owed money by a third party, Royal Group. Plaintiff adds that after Royal Group's breach of the Future Receivables Sale and Purchase Agreements, Bloom "failed to guarantee Royal Group['s] . . . prompt and complete performance" under the agreements and "fail[ed] to perform Royal Group['s] . . . obligations after" Royal Group's default, thereby breaching the personal guaranty agreements. ECF No. 11 ¶¶ 129, 151, 173, 195, 217, 239, 261. Plaintiff also alleges that Bloom lied about filing for personal bankruptcy to further avoid performance under the personal guaranty agreements. *Id.* at ¶ 109. Given the allegations that Royal Group owes

Plaintiff debts under several agreements, that Bloom executed a personal guaranty for each agreement, and that full payment has not been remitted under any of the agreements by either Royal Group or Bloom, the Court declines to find that Plaintiff has failed to state a claim for breach of guaranty.

**CONCLUSION**

For the foregoing reasons, it is hereby

ORDERED that Defendants' motion to dismiss is DENIED; and it is further

ORDERED that Defendants must answer the Amended Complaint [ECF No. 11] on or before November 20, 2026.

SO ORDERED.

Dated: October 21, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge